IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:25-CV-082-KDB-DCK

| | | |
|---|---|---|
| **JAMES DULA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **<u>MEMORANDUM AND RECOMMENDATION</u>** |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Memorandum In Support Of His Social Security Appeal" (Document No. 5) and "Defendant's Brief" (Document No. 6). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff James Dula ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Document No. 1). Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on or about November 6, 2018, under Title II of the Social Security Act, 42 U.S.C. § 405, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, both alleging an inability to work due to a disabling condition beginning June 28, 2018. (Transcript of the Record of Proceedings ("Tr.") 598). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on October 22, 2019, and again after

reconsideration on January 8, 2020. (Tr. 598). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 148).

Plaintiff filed a timely written request for a hearing on March 28, 2020. (Tr. 157–58). On March 11, 2021, Plaintiff appeared and testified at a telephone hearing before the Administrative Law Judge (the "ALJ"). (Tr. 46–72). In addition, Don Stephens, a vocational expert ("VE"), and Quentin Sanders, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on April 1, 2021, denying Plaintiff's claim. (Tr. 27–40). On April 1, 2021, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on October 6, 2021. (Tr. 3–5). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 3).

Plaintiff filed a complaint on December 3, 2021, in this court concerning the April 2021 ALJ opinion. (Tr. 684–86). The Honorable Graham C. Mullen entered an order granting Plaintiff's Motion for Summary Judgment and remanded the matter to the ALJ for further consideration. (Tr. 692–97). The ALJ then held another telephonic hearing on February 8, 2024, in which Plaintiff appeared and testified. (Tr. 624–66). Additionally, Dr. Koenig, a medical expert in neurology, Pamela Harris, a vocational expert, and Plaintiff's attorney, Christine Latona,

appeared at the hearing. Id. After reconsideration, the ALJ issued another unfavorable decision on March 13, 2024. (Tr. 595–623).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on May 27, 2025. (Document No. 1). On June 4, 2025, the undersigned was assigned to this case as the referral Magistrate Judge.

"Plaintiff's Memorandum In Support Of His Social Security Appeal" (Document No. 5) was filed August 21, 2025; and the Commissioner's "Defendant's Brief" (Document No. 6) was filed September 19, 2025. "Plaintiff's Reply Brief In Support Of His Social Security Appeal" (Document N. 7) was filed October 3, 2025.

This matter is ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Kenneth D. Bell is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between June 28, 2018, and December 31, 2023.[1] (Tr. 598-99). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 615).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since June 28, 2018, the alleged disability onset date. (Tr. 601). At the second step, the ALJ found that seizure disorder; epilepsy; headaches post aneurysm clipping; and anxiety were severe

impairments.[2] (Tr. 601). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 602–04).

Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff retained the capacity to perform work activity at all exertional levels, with the following limitations:

> claimant can tolerate no exposure to extreme heat and extreme cold, and occasional exposure to humidity and concentrated dust and fumes. The claimant can work in a noise environment rated as moderate or less by the SCO. The claimant cannot climb ladders, ropes, or scaffolds, and cannot be exposed to hazards such as unprotected heights and moving machinery that requires alertness or agility to avoid or evade. The claimant cannot perform tasks next to open flame or open bodies of water, or tasks that involve sharp objects such as knives or cutting blades. The claimant cannot operate motorized equipment or vehicles. The claimant can sustain concentration, persistence, and pace to stay on task to complete simple, routine, repetitive tasks while working in a setting that does not require strict production quotas or a consistently fast pace, so no high-speed conveyor belt/assembly line work. The claimant can occasionally interact with the public but is not able to provide direct customer service. The claimant can frequently interact with coworkers and supervisors. The claimant can adapt to occasional changes in the work setting and duties.

(Tr. 605). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform past relevant work as a poultry eviscerator, poultry hanger, poultry boner, or hostler. (Tr. 614). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age,

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 615). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included marker, photocopy machine operator, and office helper. Id. Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between June 28, 2018, and the date last insured, December 31, 2023. (Tr. 616).

On appeal to this Court, Plaintiff alleges the ALJ's decision includes the following errors: (1) the ALJ did not explain how Plaintiff can work in two-hour increments despite having moderate limitations in concentrating, persisting, and maintaining pace; (2) the ALJ failed to consider Plaintiff's impairments and related medical evidence of insomnia; and (3) the ALJ improperly discredited Plaintiff's testimony on erroneous grounds. (Document No. 5). The undersigned will discuss each of these contentions in turn.

**A. The Residual Functional Capacity for Concentration, Persistence, and Pace**

In the first assignment of error, Plaintiff argues that the ALJ failed to adequately explain why the RFC allowed for Plaintiff to "sustain concentration, persistence, and pace sufficient to carry out simple instructions in 2-hour increments," despite finding Plaintiff had "moderate limitations" in concentrating, persisting, or maintaining pace. (Document No. 5, p. 10). Plaintiff contends the ALJ is required to explain "why limitations in step three do not translate" into an articulated "limitation in the RFC" and argues that "[t]he ALJ never explained how leaving SSA's customary work break schedule in place sufficiently accounted for [Plaintiff's] moderate limitations . . . in ability to maintain concentration or pace." Id. at 11, 12. Plaintiff notes that the SSA's Program Operations Manual System ("POMS") explains that, customarily, work breaks occur every two hours, and Plaintiff argues that restriction to "working in 2-hour intervals does

not adequately account for a moderate limitation in the ability to stay on task, absent further explanation." Id. at 13 (citing Ludlow v. Comm'r, SSA, 2016 WL 4466790 (D.Md. Aug. 23, 2016)).

Additionally, Plaintiff argues that the ALJ failed to build the requisite logical bridge between the evidence and her conclusions regarding Plaintiff's RFC for concentration, persistence, or pace. Id. at 14. Plaintiff contends that "the ALJ never identified the evidence that supports her conclusion that [Plaintiff] can maintain concentration for at least two-hour periods . . . ." Id. Specifically, Plaintiff argues that "[t]he ALJ failed to provide sufficient rationale for how, despite [Plaintiff's] documented episodes of staring, non-responsiveness, and seizure or partial seizure activity, she concluded that [Plaintiff] could remain on task during a full eight-hour workday." Id. at 15. Finally, Plaintiff contends that "the medical record does not support the conclusion that [Plaintiff] can maintain focus on simple, routine, repetitive tasks" and that "[t]he evidence contradicts the ALJ's findings of only moderate limitations in concentration, persistence, and pace . . . ." Id. Specifically, Plaintiff highlights that "Dr. Allaboun opined Plaintiff would be unable to focus on even one- to two-step tasks for more than 25% of the day due to neurological impairments" and that "[t]he VE testified that being off task 25% of the workday would preclude competitive employment." Id.

In its Response, Defendant argues "the ALJ explained that she accounted for Plaintiff's effects of anxiety and seizures (with episodes of confusion) on Plaintiff's memory, social functioning, concentration, persistence, pace, and adaptation by finding that Plaintiff could sustain concentration, persistence, and pace to stay on task to complete simple, routine, repetitive tasks while working in a setting that does not require strict production quotas or a consistently fast pace . . . ." (Document No. 6, p. 13). Defendant notes that while Plaintiff "reported that he had panic

attacks and difficulty focusing" to Dr. Kadry Allaboun, M.D., the ALJ found that "Dr. Allaboun's records do not identify any objective findings related to focus." Id. at 12–13 (citing Tr. 610). Defendant further notes that the ALJ explained the findings of consultive psychological examiner Rita Weatherford, M.A., including that Ms. Weatherford found that "[a]lthough Plaintiff's thought processes were slow, they were coherent and logical" and "[a]lthough Plaintiff could not remember the address of the examination office, he otherwise had intact and recent memory." Id. at 13 (citing Tr. 610). Finally, Defendant highlights that the ALJ considered "Plaintiff's daily activities," including that "Plaintiff could prepare meals, watch television, read, and manage funds." Id. at 14 (citing Tr. 610, 613).

In Reply, Plaintiff reiterates his argument that the ALJ "fail[ed] to build the required logical bridge between the step-three finding of moderate [concentration, persistence, and pace] limitation and the RFC restriction to simple, routine, repetitive tasks performed in two-hour increments." (Document No. 7, pp. 1–2) (internal citations omitted). Plaintiff argues that this case presents a similar error to that in Mascio v. Colvin in which the ALJ "found a moderate [concentration, persistence, and pace] limitation at step three but failed to explain why that limitation does not translate into an RFC restriction." Id. at 2 (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)).

The undersigned finds that the ALJ's conclusions regarding Plaintiff's RFC for concentration, persistence, and pace are supported by substantial evidence and that the ALJ adequately explained the connection between the evidence and her findings.

The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. "Concentration, persistence, or pace"

is defined as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C.3. The Fourth Circuit has explained that, regarding this inquiry, "the ability to perform simple tasks differs from the ability to stay on task." Mascio, 780 F.3d at 638.

Plaintiff relies heavily on the Fourth Circuit's ruling in Mascio in his argument that the ALJ failed to adequately consider Plaintiff's RFC for concentration, persistence, or pace and failed to adequately explain her conclusions. See (Document No. 7, p. 2) ("Mascio is controlling and directly on point."). In Mascio, the ALJ found at step three that "Mascio had moderate difficulties in maintaining concentration, persistence, or pace . . . ." Mascio, 780 F.3d at 638. Despite this finding, the ALJ in Mascio posed a hypothetical to the VE that "[n]otably . . . said nothing about Mascio's mental limitations." Id. at 637. The ALJ in Mascio ultimately found that "Mascio's moderate limitation in concentration, persistence, or pace at step three [did] not translate into a limitation in Mascio's residual functional capacity" with "no explanation." Id. at 638. The Mascio court ultimately remanded because the ALJ provided "no explanation" at all regarding whether the claimant's mental limitation affected her RFC. Id. at 638.

Alternatively, the Fourth Circuit affirmed an ALJ's decision where "the ALJ discussed in detail the psychological evaluations performed by the SSA psychological consultants . . . and sufficiently explained why the mental limitation to simple, routine, repetitive tasks accounted for [the plaintiff's] . . . moderate limitations in her concentration, persistence, or pace . . . ." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). In that case, the ALJ sufficiently explained her RFC finding by explaining the weight given to evidence such as "the State agency psychological

consultants' mental assessments," an "opinion expressed by [a different psychologist] following [a] psychological consultive examination," and the Plaintiff's own statements. Id. at 122.

Here, the undersigned concludes that the ALJ sufficiently explained her conclusions regarding Plaintiff's ability to sustain concentration, persistence, or pace. At the outset, the undersigned finds that this case is dissimilar from Mascio because in Mascio, the ALJ failed to account for the plaintiff's mental limitations and failed to explain why she did so. Here, the ALJ did neither. First, unlike the ALJ in Mascio who "said nothing about Mascio's mental limitations" in her hypothetical, the ALJ here included Plaintiff's mental limitations in the RFC and in her hypothetical to the VE. Mascio, 780, at 637. In the hypothetical posed to the VE in this case, the ALJ asked the VE to apply his opinion to an individual who is "able to sustain concentration, persistence, and pace to stay on task, to complete simple, routine, and repetitive tasks, while working in a setting that does not require strict production quotas or is consistently fast paced." (Tr. 661). Therefore, unlike in Mascio, the ALJ included limitations related to Plaintiff's mental abilities in Plaintiff's RFC.

Second, the ALJ in this case sufficiently explained her findings regarding Plaintiff's RFC for concentration, persistence, or pace and constructed the requisite logical bridge between the evidence and her conclusions. The ALJ considered the reports of Dr. Allaboun and highlighted that Dr. Allaboun noted Plaintiff's "report[ed] difficulty focusing, multitasking, and remembering . . . ." (Tr. 610). The ALJ further considered that "[t]hough some of Dr. Allaboun's reports note issues with focus . . . they do not identity any objective findings related to focus." Id. The ALJ further highlights that although "Dr. Allaboun noted in July 2019 he would consider a referral to mental health . . . there is no indication he placed a referral." Id. The ALJ also considered Dr. Allaboun's "opinion that [Plaintiff] is unable to focus on even one- and two-step tasks for more

than 25 percent of the work day," but the ALJ explained that she found this opinion to be "unpersuasive." (Tr. 612). The ALJ explained that she found Dr. Allaboun's opinion related to Plaintiff's focus to be unpersuasive considering M.E. Dr. Ronald Koenig's analysis. (Tr. 613). The ALJ noted that "Dr. Koenig testified he does not see support for finding [Plaintiff] would be off task 25% of the workday," and "he does not know on what basis Dr. Allaboun made that assessment." Id. The ALJ further credits Dr. Koenig's explanation that "as a neurologist, he would not make such a statement without psychological testing to support it." Id. The ALJ additionally explained that "Dr. Koenig's testimony that Dr. Allaboun's opinion regarding time off task lacks support is consistent with other evidence in the file." (Tr. 614). For example, the ALJ notes that Plaintiff's "sister reported he is able to prepare meals, watch TV, read, and manage funds." Id.

Next, the ALJ explained her findings that Plaintiff did not possess a more limited RFC for concentration, persistence, or pace by crediting the May 2019 consultative psychological exam, performed by psychological examiner Rita Weatherford, MA. (Tr. 612). The ALJ noted that Ms. Weatherford "opined [Plaintiff] would be able to understand, retain, and follow instructions, and sustain attention for simple, repetitive tasks." Id. The ALJ further noted her findings that "although [Plaintiff's] thought processes were slow, they were coherent and logical," that he "was oriented and able to recite five words after one trial," that "[h]e could also repeat seven digits forward and four backward, correctly perform serial threes and sevens," and "although he was unable to remember the address of the examination office, he otherwise had intact recent and remote memory." (Tr. 610). Finally, the ALJ explained that she found Ms. Weatherford's opinion to be "more persuasive [than Dr. Allaboun's] because she is a mental health provider and based her opinion on objective testing." (Tr. 614).

Ultimately, the undersigned finds that the ALJ provided sufficient explanation for her findings that Plaintiff did not possess a more limited RFC for concentration, persistence, or pace. The undersigned concludes that this case is dissimilar from Mascio, in which the ALJ provided "no explanation," Mascio, 780 F.3d at 638, and is more similar to Shinaberry, in which the ALJ "sufficiently explained" her conclusions by weighing the evidence in the record and connecting that evidence to her conclusions, Shinaberry, 952 F.3d at 121.

**B. The Insomnia Impairment**

Next, Plaintiff argues the ALJ failed to consider Plaintiff's insomnia as an impairment at step two of her analysis. (Document No. 5, p. 17). Plaintiff contends that "the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." Id. Plaintiff further argues that "the ALJ here not only failed to list insomnia as a severe impairment at step two[] but also failed to determine it as non-severe." Id. at 19.

Plaintiff argues this case is substantially similar to Thomas H. v. O'Malley, where the court found reversible error because the ALJ both failed to include headaches and chronic sinusitis in the list of impairments at step two and failed to address and determine them to be non-impairments anywhere else in the opinion. Id. at 18 (citing Thomas H. v. O'Malley, 2024 WL 1350070 (M.D.N.C. Mar. 29, 2024)). Plaintiff argues this case is similar to Thomas H., contending that the ALJ only addressed Plaintiff's insomnia to summarize Plaintiff's testimony at the hearing, but failed to provide "findings of credibility, consistency, or explanation of how insomnia impacts his RFC." (Document No. 5, p. 19 (citing Tr. 606)). Finally, Plaintiff argues the ALJ failed to consider the substantial evidence in the record that demonstrates his insomnia is a "medically determinable" impairment and further failed to determine its impact on Plaintiff's RFC. Id. at 20. Specifically, Plaintiff notes that "Dr. Allaboun opined that [Plaintiff] would be off task 25% of the

workday" and that "[t]he vocational expert testified that no jobs would be available for an individual who is off task 25% of the day." Id. (citing Tr. 581, 616).

In Response, Defendant argues that "Plaintiff did not allege insomnia as a disabling impairment when he first filed his disability application." (Document No. 6, p. 16) (citing Tr. 86). Nevertheless, Defendant contends "the ALJ acknowledged Plaintiff's testimony that he has issues with insomnia, that he sleeps 4–5 hours per night, and that he sleeps during the day a few times per week for a few hours." Id. (citing Tr. 606) (internal quotation marks omitted).

In Reply, Plaintiff argues that "[t]he Commissioner's assertion that [Plaintiff] was required to list insomnia as a disabling impairment is legally incorrect" and that Plaintiff may carry his burden at step two "by demonstrating the existence of a medically determinable impairment through medical evidence." (Document No. 7, p. 3) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Plaintiff further reiterates his argument that "the ALJ failed to make express findings as to whether insomnia was a medically determinable impairment, and if so, whether it was severe or non-severe." Id. at 4.

The undersigned finds that neither the ALJ's omission of insomnia as a step two impairment, nor the ALJ's discussion of insomnia, constitutes reversible error. The undersigned notes that "[a]s an initial matter, the ALJ's omission of a severe impairment at step two does not, without more, necessitate remand." Thomas H., 2024 WL 1350070, at *3 (D.Md. Mar. 29, 2024). Rather, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment at step two is harmless." McClain v. Colvin, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citing Beitzel v. Comm'r, Soc. Sec. Admin., 2013 WL 3155443, at *2 (D.Md. June 18, 2013); Wake v. Astrue, No. 2:11-CV-035, 2012 WL 6851168, at *4 (W.D.N.C. Dec. 4,

2012), adopted by, 2013 WL 145764 (W.D.N.C. Jan. 14, 2013)). Where the ALJ does not "fail to consider relevant evidence in her calculation of the RFC," there has been no reversible error. Id. For example, in Thomas H., the ALJ failed to consider headaches, which the plaintiff testified in his hearing that he "experiences . . . about three times per week and [that he] needs to rest for 30–45 minutes in the dark when [the headaches] occur." Thomas H., 2024 WL 1350070, at *5. Further, the vocational expert in Thomas H. testified that such necessity for frequent breaks would "preclude all work." Id. Thus, the ALJ in that case erred at step two by failing to discuss an impairment that the record suggested was relevant to Plaintiff's ability to work.

Here, the ALJ's omission of insomnia from her findings at step two does not constitute reversible error. The undersigned notes that the record does reflect that Plaintiff has "difficulty sleeping" and insomnia. See, e.g., (Tr. 535, 869, 898, 937, 976). However, unlike in Thomas H., Plaintiff fails to allege any evidence the ALJ failed to consider that would impact Plaintiff's RFC. While the plaintiff in Thomas H. testified that he experienced headaches that would cause him to require 30–45-minute breaks in a dark room, here, when asked if he had difficulty sleeping at night, Plaintiff in this case testified that "it depends." (Tr. 655). Plaintiff further testified that he occasionally takes naps "when [he is] home." Id. Plaintiff contends that this asserted impairment affects his capacity to work because of Dr. Allaboun's opinion "that Plaintiff would be off task 25% of the workday." (Document No. 5, p. 20). However, as discussed above, the ALJ considered Dr. Allaboun's opinion at length and sufficiently explained that she did not find his opinion to be persuasive or consistent with the medical record. To the extent that Plaintiff contends that insomnia and related fatigue could affect Plaintiff's concentration, persistence, or pace, as discussed above, the ALJ sufficiently considered and explained her conclusions related to those

functions. Ultimately, Plaintiff fails to allege that the ALJ overlooked any specific evidence in the record related to insomnia that would plausibly affect the RFC determination.

**C. Plaintiff's Testimony**

Finally, Plaintiff argues that the ALJ erred by improperly discrediting Plaintiff's testimony. (Document No. 5, p. 21). Plaintiff asserts that "in evaluating a claimant's subjective statements, the ALJ must provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [] clearly articulated for purposes of any subsequent review." Id. at 22 (citing SSR 1-3-p, at *9) (internal quotation marks omitted). Plaintiff contends that the ALJ erroneously "relied on [Plaintiff's] reported daily activities, such as preparing simple meals, attending to personal hygiene, performing household chores, shopping in stores, watching television, reading, and paying bills, to discount [Plaintiff's] subjective complaints as well as the opinions of Dr. Allaboun." Id. Plaintiff further argues that "[t]he fact that he tries—often struggling—to do household chores and maintain a semblance of normalcy should not be used against him." Id. at 24.

In Response, Defendant argues that the ALJ properly evaluated Plaintiff's subjective complaints, and "the record evidence supports the ALJ's RFC finding with respect to objective medical evidence and treatment history." (Document No. 6, p. 7). Defendant further contends that "the ALJ explained that after considering all the evidence, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record." Id. at 7.

The undersigned finds that the ALJ did not err in her consideration of Plaintiff's subjective complaints. The undersigned notes that Plaintiff does not allege any specific testimony, complaints, or statements that the ALJ supposedly improperly "discounted." See (Document No.

5). To the extent Plaintiff argues that the ALJ improperly considered Plaintiff's daily activities in her evaluation of Dr. Allaboun's opinion, the undersigned notes that the ALJ largely found Dr. Allaboun's opinion to be unpersuasive in light of its lack of "objective findings," its inconsistency with Dr. Koenig's review, and its inconsistency with the 2019 psychological examination. (Tr. 612–614). Plaintiff's daily activities were one of many factors that the ALJ weighed in her determination of the persuasiveness of Dr. Allaboun's opinion. Ultimately, the undersigned finds that Plaintiff's argument regarding his subjective testimony fails to allege any facts or contentions that the ALJ improperly weighed, and Plaintiff's arguments regarding his daily activities and Dr. Allaboun's opinion improperly ask this court to reweigh the evidence.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service

of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 14, 2026

David C. Keesler
United States Magistrate Judge